**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**at COVINGTON**

**CRIMINAL ACTION NO. 16-43-DLB-CJS**
**CIVIL ACTION NO. 20-113-DLB-CJS**

**UNITED STATES OF AMERICA**                                    **PLAINTIFF**

**vs.**                    **REPORT AND RECOMMENDATION**

**BRANDON MORAN**                                              **DEFENDANT**

**\*\*\*    \*\*\*    \*\*\*    \*\*\***

This matter is before the Court on Defendant Brandon Moran's *pro se* 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (R. 131). The United States filed a Response to Moran's § 2255 Motion (R. 140) and Moran filed a Reply (R. 142). Pursuant to local practice, this matter has been referred to the undersigned for preparation of a Report and Recommendation under 28 U.S.C. § 636(b). For the reasons stated below, it will be recommended that Moran's § 2255 Motion **be denied**.

## I. FACTUAL AND PROCEDURAL HISTORY

On June 6, 2016, a computer operated by Kentucky's Internet Crimes Against Children Task Force was searching for available child pornography on a peer-to-peer network and successfully downloaded four files containing child pornography from a single IP address near Marysville, Kentucky. Alerted to the download, Kentucky State Police Detective Brian Cooper confirmed that the files contained child pornography, requested subscriber information for the associated IP address, and obtained a search warrant for the home where Brandon Moran resided with other family members.

*United States v. Moran*, 771 F. App'x 594, 595 (6th Cir. 2019) (footnote omitted).

Detective Cooper interviewed Moran and seized his computer, which contained "approximately 200 files" with "depictions of minors engaging in sexually explicit conduct." *Id.*

at 596. The United States charged Moran with receiving, possessing, and distributing child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (4)(B). (R. 18 at Page ID 43-44). Following a three-day trial, a jury convicted Moran on all four counts. *Moran,* 771 F. App'x at 595. Moran appealed, arguing that there was insufficient evidence to support his distribution conviction and that the District Court abused its discretion by admitting certain expert opinion testimony and by answering a question from the jury. The Sixth Circuit Court of Appeals affirmed. *Id.* at 602. Moran then timely filed the instant § 2255 Motion. (R. 131).

In his Motion, Moran states that "ground one" is as follows: "Counsel on direct appeal failed to argue that Ashcroft v. Free Speech does not prohibit nondescript search for child erotica that led to both real and virtual image files whose depictions were unseen before computer shared them." (R. 131 at Page ID 1325). He lists the following as supporting facts:

a) "Counsel failed to argue that defendant's Shared Folder included Virtual child pornography which the Supreme Court held to be legal[.]"

b) Counsel "failed to challenge the court's admission that 'it is not a crime to possess Virtual images' with its representation that 'this case doesn't involve Virtual images', thus minimizing the essential 'knowledge' element[.] (See ECF #109, pg 243, lines 1-4)."

c) "Counsel failed to posit that absent a Search History, the defendant most likely sought links or terms too vague or ambiguous to conclude whether Actual or Virtual images were his specific intent."

d) "An effective attorney would have noted that the government's own witness said 'No' when asked if he would ever just rely on a file's name to determine what that file contains. (See ECF #108, pg 49, lines 12-21)."

e) "Counsel failed to argue that searches for nondescript Child Erotica, legal Virtual images together with unopened, unviewed image files in the Shared Folder, combined with the lack of an actual Search History, prevent satisfaction of the essential 'knowledge' element."

(*Id.*). Moran concludes that "counsel's errors led the Court of Appeals to affirm a statutorily impermissible verdict of guilty. These errors both at trial and on direct appeal prejudiced defendant

as he would not have been found guilty of either Distribution or Receipt." (*Id.*). Moran did not file a memorandum in support of his Motion.

In its Response, the United States argues that counsel, at trial and on appeal, acted reasonably and within the standards set forth in *Strickland v. Washington,* 466 U.S. 668 (1984) and its progeny. (R. 140 at Page ID 1356-59). In support of this argument, the United States attached an Affidavit from Moran's trial counsel, which sets forth counsel's theory supporting his defense strategy. (R. 140-1). The United States also argues that Moran's Motion is procedurally deficient and his arguments should be deemed waived because Moran "[m]ade little effort to develop his arguments, simply citing specific parts in the record but failing to apply the holdings of any case law to his circumstances." (R. 140 at Page ID 1360).

Moran filed a somewhat rambling and disjointed Reply wherein he admits, as he did to investigating officers, that he searched for virtual child erotica, which "was totally legal," but inadvertently received "real child erotica."[1] (R. 142 at Page ID 1366). According to Moran, this was, or should have been, the crux of his defense and is supported by the fact that "the U.S.'s expert witnesses" had not testified to one incriminating computer search. (*Id.* at Page ID 1368). If counsel had adequately explained Moran's search history, or lack thereof, it would have been clear to the jury that he did not intend to receive or distribute "real child erotica." (*Id.* at Page ID 1366-67). Furthermore, the fact that he did not intend to receive or distribute "real child erotica" should have been argued to the Sixth Circuit Court of Appeals, which would have resulted in a reversal. (*Id.* at Page ID 1369).

---

[1] The terms "virtual child erotica," "virtual child pornography," "legal virtual child pornography," "child pornography," "actual child pornography," and "illegal actual child pornography" are used somewhat interchangeably throughout the record. For purposes of this Report and Recommendation, any reference to child pornography or erotica that contains the word "virtual" refers to virtual erotica or pornography which can be legally received, possessed, and distributed. Any reference to child pornography or erotica that does not contain the word "virtual" refers to pornography or erotica that it is illegal to receive, possess, or distribute.

Moran also addresses the procedural deficiencies raised by the United States, *i.e.,* that he did not adequately develop his arguments either factually or legally in his Motion. (R. 142 at Page ID 1369-71). According to Moran, his Motion was sufficient; however, in his Reply, Moran does cite to additional facts in the record and to supportive case law. (*Id.*).

Although Moran identifies his only "ground" for relief as a claim of ineffective assistance of appellate counsel, his arguments appear to take issue with counsel's performance at trial and on appeal. Therefore, to the extent they are understood, Moran's arguments are addressed accordingly below.

## II.   ANALYSIS

### A.   Governing Legal Standard

Under 28 U.S.C. § 2255(a), a federal prisoner may seek relief on grounds that: his conviction or sentence violated the Constitution or laws of the United States; the court lacked jurisdiction to impose the sentence; the sentence exceeded the maximum authorized by law; or the sentence is otherwise subject to collateral attack. To succeed on a § 2255 motion alleging constitutional error, a federal prisoner "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). To obtain relief for a non-constitutional error, a federal prisoner "must establish a 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *Id.* (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)). In sum, a federal prisoner must allege in his § 2255 motion that: (1) his conviction was the result of an error of constitutional magnitude; (2) his sentence was imposed outside of statutory limits; or (3) there was an error of law or fact so fundamental as to render the proceedings invalid. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (citing *Mallett v.*

*United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). A federal prisoner must prove his allegations by a preponderance of the evidence. *Id.* at 964. With the preceding overarching standards in mind, Moran's allegations are addressed below.

### B. Ineffective Assistance of Trial and Appellate Counsel Claims

When assessing an ineffective assistance of trial counsel claim, the Court must consider "whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686 (1984). To establish he has been deprived of effective assistance, a defendant must show that counsel's performance was both constitutionally deficient and prejudicial. *Id.*

To prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured by "prevailing professional norms . . . considering all the circumstances." *Id*. at 688. Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. When assessing counsel's performance, the Court must make "every effort . . . to eliminate the distorting effects of hindsight . . . and to evaluate the conduct from counsel's perspective at the time." *Id*.

To prove prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691.

The two-prong *Strickland* test for ineffective assistance of trial counsel also applies to appellate counsel. *Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013). Thus, as with trial counsel, a defendant challenging the effectiveness of appellate counsel must show deficient performance and that he was prejudiced by that deficient performance. *Id.* With the preceding standards in mind, Moran's claims as applied to ineffective assistance of trial and appellate counsel are addressed below.

### 1.    Virtual Child Pornography vs. Actual Child Pornography

Moran states that his overarching argument is that "he searched for virtual child erotica and in the process received real child erotica." (R. 142 at Page ID 1366).[2] Moran is correct that "[i]n child pornography prosecutions, the government must show that the videos and images at issue depict actual children." *United States v. Edington*, 526 F. App'x 584, 592 (6th Cir. 2013); *also see United States v. Farrelly*, 389 F.3d 649, 653 (6th Cir. 2004) (superseded by statute on other grounds as recognized in *United States v. Williams*, 411 F.3d 675, 677 n.1 (6th Cir. 2005)). Furthermore, Moran is correct that the receipt, possession, and distribution of child pornography must be knowing. 18 U.S.C. §§ 2255(a)(2), (b)(1). Thus, according to Moran, if his trial counsel (and apparently appellate counsel as well) had based his defense on that overarching argument, the jury would not have been able to find he had the necessary intent in order to convict him.[3] (R. 131; R. 142).

---

[2] In his Reply, Moran states that "[i]t has been his contention all along that he was simply looking for images that are totally legal all along (sic)." (R. 142 at Page ID 1367). Conversely, Moran also states in his Reply that he "never made the claim that he was just looking for virtual images as Eckes (his counsel) contended and as the U.S. presented to the Court." (*Id.* at Page ID 1368). Giving Moran the benefit of the doubt, it appears that this second statement, which contradicts the first and his overarching argument, refers to counsel's failure to argue at trial and on appeal Moran's contention that he was just looking for virtual images.

[3] Although not clearly delineated in Moran's Motion and Reply, this is a theme that appears to run throughout his arguments.

In his Affidavit, Attorney Eckes, who represented Moran at trial and on appeal, stated:

> In theory, I could have explicitly argued that Mr. Moran was likely searching for virtual pornography, but accidently received real child pornography. However, this argument would have been by inference only, and counsel choose (sic) instead to focus on the fact that the government did not know what Mr. Moran searched for. To that end, the better inference was that Mr. Moran could have been searching for anything and received child pornography. Arguing that Mr. Moran was specifically searching for legal virtual child erotica would have invited the conclusion that Mr. Moran had an interest in child erotica in general, and therefore, was more likely to have also searched for or knowingly possessed real child pornography.

(R. 140-1 at Page ID 1362-63). Because this is a question of trial strategy,

> [i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689.

The United States was required to prove that Moran knowingly received, possessed, and distributed child pornography. The investigating officers testified that a peer-to-peer network such as BitComet, which was used by Moran:

> use[s] the internet to share content directly between computers that have the same or compatible client software. To find available content, . . . users typically go to an index site where search terms are entered to find torrent files. The search results are hyperlinks, which look like a file name, picture, or symbol, and, when clicked on, the torrent file is downloaded by the user's client software program. The file name often indicates what the content will be, but it is possible, for example, that a file called "cat.jpg" actually is a picture of a dog. Also, the torrent file itself does not contain the content; instead, it is the "package" and provides instructions for creating a file to receive the content and includes the metadata for the locations where that content can be retrieved on the network.

> Once the user clicks on a torrent file, the user's software, in this case BitComet, launches automatically to open the torrent file (similar to how Adobe launches to

open a .pdf file) and then begins to retrieve the content in pieces from other computers if it is available for sharing. The pieces can consist of whole files or parts of files. If the user who downloads a torrent has not allowed sharing of files, the download speed is "choked" or slowed down greatly. BitComet allows sharing of pieces before a whole file is received, and the version of BitComet on Moran's computer allowed the user to share by default or to turn off sharing.

*Moran*, 771 F. App'x at 597.

Computers operated by state investigators monitor networks "for available content suggestive of child pornography" which they detected and sought from Moran's computer. *Id.* Because Moran had elected to share content with other BitComet users, the state's computers received files from Moran's computer, and those files contained actual child pornography. *Id.* Based on those files, the investigators obtained a search warrant and seized Moran's computer. *Id.* at 595.

Moran admitted to one of the investigating police officers that he knew there was child pornography on his computer. *Moran,* 771 F. App'x at 596. Furthermore, he admitted that, although he did not directly share child pornography, the peer-to-peer program he used could have indirectly done so. *Id.* Finally, Moran stipulated at trial that investigators "found approximately 200 files—including 106 videos and 91 images" that "contained or consisted of depictions of minors engaging in sexually explicit conduct." *Id.*

Faced with this evidence, the only realistic defense was that Moran did not intentionally seek out or share actual child pornography. The defense could have argued, as Moran now suggests, that he was looking for virtual child pornography, which is legal, and his computer mistakenly downloaded and shared actual child pornography, which is illegal. However, he has not shown how that strategic choice would have been any more effective than the choice made by counsel, which was to argue the United States failed to show what Moran was seeking and Moran was unaware what content his computer was sharing.

8

Likewise, Moran's overarching argument is without merit when applied to appellate counsel for the following two reasons. First appellate counsel did argue on appeal "that no reasonable juror could conclude that [Moran] knew, or could have known that [shared] files consisted of or contained child pornography at the time they were distributed." *Moran,* 771 F. App'x at 599. Thus, appellate counsel made the argument Moran suggests, albeit limiting that argument to distribution.

Second, the Sixth Circuit was not persuaded by counsel's argument, holding that "the evidence was sufficient to lead a reasonable juror to conclude beyond a reasonable doubt that Moran's search for child pornography produced a link to [a torrent file] . . . , which Moran activated knowing that he would receive child pornography in his shared download folder." *Id.* at 600. Moran has not shown that the Sixth Circuit would have held differently if counsel also had made this argument with regard to receipt and possession of child pornography.

Because Moran has failed to establish that counsel's trial and appellate choices of argument were strategically unsound, let alone that they were so deficient as to have deprived him of "the 'counsel' guaranteed . . . by the Sixth Amendment," *Strickland,* 466 U.S. at 868, his overarching argument is without merit.

Having addressed Moran's overarching argument, his specific arguments will be addressed as applied to both trial and appellate counsel.

### a.    Failure to Argue Moran's Shared Folder Included Virtual Child Pornography

Attorney Eckes admitted he did not argue Moran's computer contained virtual child pornography. (R. 14-1 at Page ID 1362). However, as noted above, that was a strategic choice, which, although ultimately not successful, was nonetheless reasonable.

Furthermore, Moran has failed to show how making this argument would have benefited him.  The jury was well aware that Moran's computer contained all types of legal pornography, as reflected by the following discussion regarding jury instructions.

| | |
|---|---|
| THE COURT: | One other thing. Bottom of Instruction 13, "you are instructed that it is not a crime to possess virtual images." Since this case doesn't involve virtual images, I'm going to remove the bracketed section. Any objection to that? |
| MR. ECKES: | I wouldn't have, but only because it did come up with -- Detective Viergutz did testify that there were some anime; there were some animated, underage videos. |
| THE COURT: | So you want me to leave that in? |
| MR. ECKES: | I would like you to leave it in. |
| THE COURT: | Any objection? I guess I could leave it in. |
| MS. LEONHARD: | That's fine. |
| THE COURT: | We'll leave it in. Usually, that's designed for all virtual versus -- but I'll leave it in at your request. It is a correct statement of the law. |

(R. 109 at Page ID 775).  And as reflected in this statement by the Court during the Sentencing Hearing: "I think the evidence does bear out that you collected mostly adult pornography." (R. 118 at Page ID 1222).  Further arguing the fact that Moran's computer contained legal pornography would not have negated the fact that it also contained illegal child pornography, and Moran has not shown how making that argument would have benefited him either at trial or on appeal.

Because Moran has failed to meet both prongs of the *Strickland* test – unreasonable representation and prejudice – this argument is without merit and does not warrant setting aside his judgment of guilt.  *Strickland*, 466 U.S. at 691.

        **b.**    **Failure to Challenge "the Court's Admission that 'It Is Not a Crime to Possess Virtual Images' with Its Representation that 'This Case Doesn't Involve Virtual Images', Thus Minimizing the Essential 'Knowledge' Element."**

It is unclear what exactly Moran's contention is. However, it appears he is contending that counsel should have argued at trial and on appeal that the presence of virtual child pornography on his computer somehow would have shown he had no knowledge of the presence of actual child pornography on his computer and the sharing thereof was accidental/unknowing/unintentional. Moran's contention is without merit for three reasons.

First, as the Sixth Circuit Court of Appeals stated in *United States v. Hentzen*, 638 F. App'x 427, 431 (6th Cir. 2015):

> The crimes of receipt and possession of child pornography "incorporate[ ] a scienter requirement as to the character of the materials involved": The defendant must have known that the files were child pornography to be guilty. *United States v. Brown*, 25 F.3d 307, 310 (6th Cir. 1994); see also *United States v. X–Citement Video, Inc.*, 513 U.S. 64, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994). "Proof of knowledge ... is rarely established by direct evidence." *United States v. Scruggs*, 549 F.2d 1097, 1104 (6th Cir. 1977). Instead, knowledge of the contents of material "may be proven by circumstantial evidence." *United States v. Kussmaul*, 987 F.2d 345, 350 n.4 (6th Cir. 1993).

Here, Moran admitted that his computer contained child pornography. *Moran,* 771 F. App'x at 596. Therefore, there was actual evidence that Moran knew "the character of the materials involved" and no circumstantial evidence was necessary. *See id.*

However, there was also sufficient circumstantial evidence from which the jury could conclude Moran had the necessary scienter. Moran used peer-to-peer sharing programs, understood how those programs worked, knew he had child pornography on his computer, and that the child pornography he had on his computer was subject to being shared. *Id.* at 599. "The jury was entitled to consider Moran's admissions along with the testimony that [peer-to-peer] users typically go to an index site and enter search terms when looking for . . . files to download." *Id.* at 599. Once a user finds a file, he "must affirmatively click on it to download the . . . file and activate" retrieval of the file or files. *Id.* at 599-600. From this, the jury could infer that Moran

searched for actual child pornography and "clicked on it because he expected it to be what he was looking for." *Id.* at 600.

Second, as stated above, although counsel's choice of defense strategy may not have been successful in hindsight, it was not constitutionally deficient. As the Sixth Circuit noted in *Hentzen*, 638 F. App'x at 434, the presence of virtual child pornography shows a defendant has a sexual interest in children. Therefore, Attorney Eckes's statement that "[a]rguing that Mr. Moran was specifically searching for legal virtual child erotica would have invited the conclusion that Mr. Moran had an interest in child erotica in general, and therefore, was more likely to have also searched for or knowingly possessed real child pornography" is credible and evidence of a supportable defense strategy. (R. 140-1 at Page ID 1362-63).

Finally, Moran has failed to show how making this argument would have or could have altered the outcome at trial or on appeal.

Because Moran has failed to meet both prongs of the *Strickland* test – unreasonable representation and prejudice – this argument is without merit and does not warrant setting aside his judgment of guilt. *Strickland*, 466 U.S. at 691.

> **c.    Counsel Failed to Posit that Absent a Search History, the Defendant Most Likely Sought Links or Terms too Vague or Ambiguous to Conclude Whether Actual or Virtual Images Were his Specific Intent.**

Attorney Eckes admits he did not argue that the United States was required to show Moran's search history distinguished between actual and virtual child pornography. By refraining from making that argument, Attorney Eckes strategically sought to avoid inviting the jury to conclude "that Mr. Moran had an interest in child erotica in general, and therefore, was more likely to have also searched for or knowingly possessed real child pornography." (R. 140-1 at Page ID 1363). However, Attorney Eckes did argue the United States could not meet its burden because it

could not show any search history, regardless of the nature of the content sought, leading to the inference that Moran "could have been searching for anything and received child pornography" unintentionally.  (*Id.*).  Although Attorney Eckes did not couch the argument in the terms Moran now suggests, the argument Attorney Eckes made encompassed all searches, which included both virtual and actual child pornography.  Moran has failed to show how that argument, which was broader in scope than what he now requests, was "professionally unreasonable" assistance of counsel.  *Strickland,* 466 U.S. at 694.

Furthermore, as noted above, there was more than sufficient evidence to establish Moran's intent to receive, possess, and distribute illegal child pornography.  Moran has failed to show how adopting his now-suggested strategy would have overcome that evidence.  Thus, even if Attorney Eckes's counsel was professionally unreasonable, Moran has not shown that it had any effect on the judgment or the outcome on appeal.  *See Strickland,* 466 U.S. at 691.

Because Moran has failed to meet both pongs of the *Strickland* test – unreasonable representation and prejudice – his argument is without merit and does not warrant setting aside his judgment of guilt.  *Id.*

> **d.**   **"An Effective Attorney Would Have Noted that the Government's Own Witness Said 'No' When Asked if He Would Ever Just Rely on a File's Name to Determine What that File Contains."**

During cross-examination of Detective Couchman, the following exchange took place:

MR. ECKES:          Okay. Just to be clear, file names, whether it's the name of a torrent file or any other type of file, sometimes those can be misleading and not actually –

DET. COUCHMAN:  Yes, absolutely.

MR. ECKES:          -- describe what the file itself contains, correct?

DET. COUCHMAN:  Right. Just because it says cat.jpg doesn't mean it's a cat. Could be a dog.

MR. ECKES:          As an investigator, you would never rely just on a file name to determine what that file contains, correct?

DET. COUCHMAN:  No.

(R. 108 at Page ID 461).

During closing argument and also on appeal, Attorney Eckes did not specifically address this particular testimony by Detective Couchman.  However, he argued repeatedly that the file names were essentially irrelevant because Moran did not see those file names or know what those files contained.  (R. 110 at Page ID 814-16, 824).  As with the preceding section, Moran has failed to show how Attorney Eckes's argument, which was broader than what he now suggests, was outside the bounds of professional reasonableness and therefore ineffective assistance of counsel.  Furthermore, Moran has failed to show how making the argument he now suggests would have altered the outcome at trial or on appeal.

Because Moran has failed to meet both prongs of the *Strickland* test – unreasonable representation and prejudice – this argument is without merit and does not warrant setting aside his judgment of guilt.  *Strickland*, 466 U.S. at 691.

> **e.  "Counsel Failed to Argue that Searches for Nondescript Child Erotica, Legal Virtual Images Together with Unopened, Unviewed Image Files in the Shared Folder, Combined with the Lack of an Actual Search History, Prevent Satisfaction of the Essential 'Knowledge' Element."**

Although somewhat unclear, it appears that this is a "catch-all," wherein Moran is rearguing his overarching argument as well as his other specific arguments.  For the reasons set forth above, this "catch-all" argument is also meritless.  However, for the sake of completeness, it should be noted that counsel specifically argued that the absence of a peer-to-peer search history was relevant to the issue of knowledge; that Moran could have unknowingly received unwanted illegal child pornography while receiving and viewing legal adult pornography and virtual child

14

pornography; and that Moran's Google search history had only one reference to something arguably related to child pornography. (R. 110 at Page ID 808-13).

Furthermore, as noted repeatedly above, Attorney Eckes argued that the United States had failed to prove that Moran was searching for child pornography or that he knowingly shared that pornography. Thus, Moran's argument lacks a factual basis because Attorney Eckes did make the majority of the arguments Moran faults him for not making. Finally, as with his other arguments, Moran has failed to show how the result at trial or on appeal would have been altered if Attorney Eckes had argued the case differently.

Because Moran has failed to meet both prongs of the *Strickland* test – unreasonable representation and prejudice – this argument is without merit and does not warrant setting aside his judgment of guilt. *Strickland*, 466 U.S. at 691.

## III.    CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Federal Rules Governing Section 2255 Proceedings, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate may issue only if a defendant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court explained this requirement in *Slack v. McDaniel*, 529 U.S. 473 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought under 28 U.S.C. § 2255). Where a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484. When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it

debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, reasonable jurists would not debate the denial of Moran's § 2255 Motion or conclude that "the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Accordingly, it also will be recommended that a certificate of appealability be denied upon the entry of a final order in this matter.

## IV.    CONCLUSION AND RECOMMENDATION

For the reasons stated above, **IT IS RECOMMENDED** that:

1)    Moran's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (R. 131) **be denied;**

2)    a Certificate of Appealability **be denied** in conjunction with the entry of a final order in this matter;

3)    Judgment in favor of the United States **be entered** contemporaneously with the entry of a final order; and,

4)    Moran's collateral civil proceeding **be dismissed and stricken** from the active docket.

The parties are directed to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. *See also* Rule 8(b), Rules Governing Section 2255 Proceedings for the United States District Courts. Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Judge. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the

16

District Judge and Sixth Circuit Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985);

*United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

      Signed this 22nd day of November, 2022.



**Signed By:**

***Candace J. Smith***

**United States Magistrate Judge**

J:\DATA\habeas petitions\2255 IAC\16-43-DLB Moran R&R kk.docx